UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,      CIVIL CASE NO. 05-40263

v.

                                                HONORABLE PAUL V. GADOLA
CHARLES C. CONAWAY and               U.S. DISTRICT COURT
JOHN T. MCDONALD,

                              Defendants.
_____/

**<u>ORDER DENYING DEFENDANTS'</u>**
**<u>MOTIONS TO DISMISS</u>**

On August 23, 2005, Plaintiff Securities and Exchange Commission ("SEC"or "Commission") filed a civil complaint against Defendants Charles C. Conaway ("Conaway") and John T. McDonald ("McDonald"), alleging that Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); Rule 10b-5, 17 C.F.R. § 240.10b-5; and Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e). On August November 15, 2005, Defendants McDonald and Conaway filed separate motions to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set out below, the Court will deny Defendants' motions.

     **I.**     **Background**

This civil cause of action arises out of alleged misrepresentations and omissions by Defendants Conaway and McDonald regarding the financial condition of Kmart Corporation ("Kmart") made in the months preceding Kmart's January 2002 bankruptcy petition. Kmart was a Michigan corporation, headquartered in Troy, Michigan, and had common stock registered with the

Commission and traded on the New York Stock Exchange until December 19, 2002. Defendant Conaway was Chairman and Chief Executive Officer ("CEO") while McDonald, initially Vice-President and Treasurer, was promoted by Conaway to Chief Financial Officer ("CFO") of Kmart, during the time period in question.

According to Plaintiff's complaint, several events lead to the alleged misrepresentations and omissions by Defendants and Kmart. First, in the summer of 2001, Kmart's then Chief Operating Officer[1] allegedly made an extraordinarily large purchase of inventory in anticipation of the winter holiday season. Normally the holiday inventory purchase would begin in late September and peak in late October, timed to allow Kmart to make its subsequent supplier payments using the proceeds from the sales of the holiday merchandise. Plaintiff alleges that the early inventory overbuy in 2001 created substantial debt for Kmart at a time when it was not yet receiving sufficient holiday sales profits to pay off that debt. The result was an apparent cash crunch for Kmart that forced the company executives to develop methods to cover the liquidity problem the corporation faced.

After examining the possibilities, Kmart initially tried to lower capital expenditures and to accelerate the collection of vendor allowances. Recognizing that these efforts were not solving the problem, Defendants, along with other members of Kmart management, allegedly considered, authorized, and approved "Project SID," "SID" being short for "Slow It Down." As Plaintiff describes it, under Project SID, Kmart evaluated invoices and voluntarily chose to delay payments to certain vendors in an effort to create a larger debt cushion for the company. Kmart's vendors, however, did not appreciate the late payments and some began to withhold the shipping of their

---

[1] Kmart's former Chief Operating Officer is not here named in the complaint nor is he a party to this suit.

products to Kmart.

At the same time Project SID was implemented, Kmart was converting its inventory and payables software to a new system in order to better track its goods; this project was named "Project eLMO." Seeking to minimize the apparent problems resulting from the inventory overbuy, cash crunch, and resulting vendor problems, Defendants allegedly developed a cover story. Kmart executives told employees to justify the late payments to their suppliers by saying that glitches in the implementation of Project eLMO were responsible for the vendor problems, not the voluntary delayed payment problem. Plaintiff claims that at all times, Defendants knew Project eLMO had nothing to do with Kmart's failure to pay its suppliers on time; the late payments were, instead, part of the voluntary Project SID.

Plaintiff claims that Defendants were aware of the problems Kmart faced with respect to its liquidity troubles and with the program implemented in an attempt to diffuse the difficulties. Nevertheless, after Conaway promoted McDonald to CFO on November 9, 2001, McDonald signed Kmart's Form 10-Q(3) on or about November 27, 2001. This form, Plaintiff alleges, was misleading in at least three ways. First, the form's Management Discussion and Analysis section ("MD&A") failed to adequately describe the causes for the material changes in Kmart's accounts payable and merchandise inventory. Plaintiff claims that Kmart's accounts payable for the third-quarter of 2001 was 28% higher than that of the third-quarter of 2000 and at least $570 million of the change was past due and attributable to Project SID, although none of these changes were detailed in the MD&A. The MD&A also failed to inform investors that material changes in inventory levels were due to the COO's early inventory overbuy. Second, Kmart failed to fulfill its obligation to identify any known issues surrounding a material change in the company's liquidity, to identify actions

3

Kmart had taken or proposed to take to remedy the liquidity problem, and to identify any internal or external sources of liquidity; the MD&A failed to set forth any of this information or the existence of Project SID. Third, Plaintiff claims that Kmart's MD&A statement that "[o]ur primary sources of working capital are cash flows from operations and borrowing under our credit facilities" was misleading because hundreds of millions of dollars of Kmart's capital were attributable to Project SID.

Plaintiff also claims that Defendants knowingly or recklessly made a number of materially false and misleading statements to investors and analysts in a November 27, 2001 conference call. Plaintiff alleges that McDonald misled investors when he attempted to attribute vendor difficulties to Project eLMO instead of revealing that vendor problems were being caused by management's Project SID. Conaway furthered this misinformation by indicating that some vendor invoices were "dropped" because of the Project eLMO conversion, even though he knew the payments were voluntarily being stopped under Project SID. When asked about Kmart's problems with vendors, Conaway added that "there was a lot of noise from a small group of suppliers." Plaintiff alleges that this statement was misleading because Conaway knew that a substantial number of Kmart suppliers had stopped shipping goods to Kmart because they were not being paid as a result of Project SID. Finally, Plaintiff alleges that McDonald stated that Kmart was "fully caught up at this point," with respect to vendor payments when in fact Kmart's Assistant Treasurer notified McDonald shortly before the call by that Kmart would not be fully caught up until December. Plaintiff alleges that at the time of McDonald's statement, Kmart was nearly one-third of a billion dollars behind vendor payments as a result of Project SID.

Ultimately, after utilizing holiday season sales to pay down the debts owed under Project

SID, Kmart was unable to satisfy the nearly $1 billion in debt on its credit facility owing at the end of December 2001. Following large cash payments to Defendants Conaway and McDonald for their service to the company, Kmart filed a Chapter 11 bankruptcy petition.

Plaintiff subsequently filed a complaint, alleging three counts against each Defendant. Count One alleges that Defendants, in connection with the above facts, knowingly or recklessly, by the use of means or instrumentalities of interstate commerce or of the mails, directly or indirectly (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts or omissions of material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon persons in violation of Section 10(b) of the Exchange Act,15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated there under. Pl. Compl., ¶ 43.

Count Two alleges that Defendants violated Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), when they knowingly and substantially assisted Kmart's violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, when it filed a Form 10-Q(3) containing materially false and misleading MD&A with the Commission, with a general awareness that their roles were part of an overall activity that was improper.

Count Three alleges that Defendants Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), when they knowingly and substantially assisted Kmart's violation of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 17 C.F.R. § 241.12b-20, and 13a-13, 17 C.F.R. § 240.13a-13, when it filed a Form 10-Q(3) containing materially false and misleading MD&A with the Commission, with a general awareness that their roles were part of an overall activity that was

improper.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the district courts to dismiss any complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *See Minger v. Green*, 239 F.3d 793, 797 (6th Cir. 2001) (citations omitted). In applying the standards under Rule 12(b)(6), the Court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).

The Court will not, however, presume the truthfulness of any legal conclusion, opinion, or deduction, even if it is couched as a factual allegation. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The Court will not dismiss a cause of action "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Although the pleading standard is liberal, bald assertions and conclusions of law will not enable a complaint to survive a motion pursuant to Rule 12(b)(6). *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). To determine whether Plaintiff has stated a claim, the Court will examine the complaint and any written instruments that are attached as exhibits to the pleading. Fed. R. Civ. P. 12(b)(6) & 10(c).

## III. Analysis

### A. Defendant John T. McDonald

Defendant McDonald now moves this Court to dismiss Plaintiff's complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). McDonald argues first that,

under Count One, Plaintiff has failed to plead a primary violation of § 10(b) and Rule 10b-5. *See* 15 U.S.C. § 78j(b);17 C.F.R. § 240.10b-5. McDonald claims that because this action is one for fraud, Plaintiff must, at a minimum, allege the time, place and content of the defendant's alleged misrepresentations. *See American Town Center v. Hall 83 Assoc.*, 912 F.2d 104, 109 (6th Cir. 1990). He also claims that because Plaintiff's allegation with respect to Count One is stated in the disjunctive "or," it is impossible for him to discern which of the three mechanisms were allegedly employed in the action.

The Court finds this proposition without merit. Although Defendant McDonald alleges that he cannot determine the time, place, or content of alleged misrepresentation, Plaintiff has sufficiently set forth the facts on which its claim relies. Plaintiff alleges that Defendant McDonald misled investors when he signed the false and misleading Form 10-Q(3). This form allegedly failed to fully apprise the investors of the situation Kmart was facing, in particular it failed to apprise them as to material changes in Kmart's accounts payable and merchandise inventory, the change in Kmart's liquidity, and the effects of Project SID on the company's working capital. Plaintiff also alleges that McDonald's statements, made during the November 27, 2001 conference call, were false and misleading with respect to the effects of Project eLMO on vendor payments and the extent of Kmart's progress in catching up with vendor payments. Consequently, the facts as alleged by Plaintiff, give Defendant McDonald sufficient information to determine the time, place, and manner of the misrepresentations.

Defendant McDonald further argues that Count One should be dismissed because Plaintiff failed to demonstrate that McDonald's conference call statement that Kmart was "fully caught up," was false and that Plaintiff failed to plead that the statement was said with the requisite scienter. *See*

*In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999). This claim is equally unavailing. Plaintiff alleges that despite McDonald's statement that the company was fully caught up, Kmart was actually $365 million behind in vendor payments under Project SID, a sufficient allegation as to the falsity of Defendant's statements. Furthermore, Plaintiff alleges sufficient facts for scienter in that it claims that the Kmart Assistant Treasurer told McDonald, shortly before the conference call, that Kmart would not be fully caught up until December. That fact is sufficient to lead to the inference that Defendant McDonald knew or was reckless in not knowing that his statements were false. *See Mayer*, 988 F.3d at 638. Consequently, this Court finds that Plaintiff's allegation that Defendant McDonald's actions were "knowingly or recklessly" made, even under the particularity requirements of a fraud claim, is sufficient to survive a motion to dismiss. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally.").

Defendant McDonald next seeks to dismiss Counts Two and Three on the ground that because the complaint alleges that McDonald violated of Section 20(e) of the Exchange Act by aiding and abetting Kmart's violations of Section 10b, Rule 10b-5 (Count Two), and Section 13(a) and Rules 12b-20 and 13a-13 (Count Three), Plaintiff was required, but failed, to establish Kmart's actual violations. More specifically, McDonald claims that Kmart never experienced a material change in its levels of inventory or accounts payable, and consequently Kmart did not commit an actionable violation of its reporting obligations or the anti-fraud provisions of the securities laws. Defendant claims, "The documents at issue, properly analyzed, refute any allegation that Kmart experienced a material change in its levels of inventory or accounts payable during the third quarter of 2001." Def. Br., p. 9. If Kmart did not commit a violation, then *a fortiori*, McDonald could not have committed an aiding and abetting violation.

8

The Court of Appeals for the Sixth Circuit stated has set forth three elements for an aiding and abetting claim under Section 20(e):

> a person may be held as an aider and abettor only if some other party has committed a securities law violation, if the accused party had general awareness that his role was part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation.

*SEC v. Washington County Utility Dist.*, 676 F.2d 218, 224 (6th Cir. 1982) (citing *SEC v. Coffey*, 493 F.2d 1304 (6th Cir.1974), cert. denied, 420 U.S. 908 (1975)).

Examining the complaint in light of the first element, Plaintiff has sufficiently alleged that Kmart committed a securities law violation when filed the false and misleading Form 10-Q(3). Plaintiff alleges the form was false and misleading because it failed to describe Kmart's material change in accounts payable, in inventory, and in liquidity. Furthermore, the form failed to describe any significant cause for the material change. Although Defendant McDonald disputes the materiality of Kmart's changes, materiality issues are "normally reserved for the jury," *United States v. DeSantis*, 134 F.3d 760 (6th Cir. 1998) (citing *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976)).

Turning to the second element, Plaintiff alleges that Defendant McDonald was generally aware of the improper activity by Kmart because he assisted in the effort to hide the difficulties the company was facing as a result of the inventory overbuy and resulting Project SID by creating and implementing the Project eLMO cover story. Defendant's general awareness of the improper activity was also evident, Plaintiff claims, because Defendant McDonald used the eLMO cover story to mollify investors' fears about the vendor difficulties when he spoke at the November 27, 2001 conference call.

Finally, with respect to the third element, Plaintiff has alleged that McDonald substantially assisted the violation when Defendant approved Project SID, invented the eLMO cover story, and disseminated misinformation regarding the relationship between Project SID, Project eLMO, and the vendor payments, to those participating in the conference call. After examining the complaint, the Court finds that Plaintiff has sufficiently pleaded all three elements of the aiding and abetting claims, Counts Two and Three, against Defendant McDonald.

Accordingly, this Court finds that the allegations set forth by Plaintiff provides Defendant McDonald with "fair notice of the plaintiff's claim[s]" such that he "may prepare a responsive pleading." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). Defendant McDonald's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6) will be denied.

B.  Defendant Charles C. Conaway

Defendant Conaway also moves this Court to dismiss Plaintiff's complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Conaway attacks the motion in the reverse order of McDonald, but his arguments are substantially similar. First, Defendant Conaway claims that Counts Two and Three, the aiding and abetting claims, fail to state claims on which relief can be granted because Plaintiff has not alleged that Defendant assisted in any way with Kmart's disputed 10-Q form nor has Plaintiff alleged that Defendant had knowledge that Kmart's MD&A failed to comply with any MD&A disclosures that were required. Turning to Count One, Defendant next attacks Plaintiff's pleading against Defendant Conaway for his statements made during the conference call on November 27, 2001. Conaway asserts that the complaint does not adequately

allege that the statements he made were false nor does it sufficiently allege the requisite scienter. For the reasons stated below, Defendant Conaway's motion to dismiss will be denied.

Examining Conaway's challenge to Counts Two and Three, Defendant argues that Plaintiff has failed to adequately allege the elements necessary to establish a claim for aiding and abetting under Section 20(e). Stated again,

> a person may be held as an aider and abettor only if some other party has committed a securities law violation, if the accused party had general awareness that his role was part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation.

*SEC v. Washington County Utility Dist.*, 676 F.2d 218, 224 (6th Cir. 1982) (citing *SEC v. Coffey*, 493 F.2d 1304 (6th Cir.1974), cert. denied, 420 U.S. 908 (1975)). Defendant argues that he did not participate in any way in the allegedly faulty 10-Q report; Conaway did not create, draft, review, sign, or approve the form. Conaway also argues that besides his lack of participation in any aspect of the report, Plaintiff has failed to allege that he had sufficient knowledge that the report was faulty. Conaway claims, he did not assist, nor did he have the requisite knowledge required for a claim of aiding and abetting.

The Court finds Conaway's arguments without merit at this procedural juncture. Plaintiff has sufficiently alleged both Conaway's aiding and abetting actions, and his knowledge of the improper activity. Plaintiff has alleged that Conaway was subjectively aware of the inventory overbuy that lead to Kmart's liquidity problem. Plaintiff also alleges that Conaway was part of the management group that, following the start of the liquidity problem, developed and implemented the plan to use Project SID to slow vendor payments and to use Project eLMO as a cover story for the resulting vendor problems. These facts readily lead to an inference that Defendant Conaway

"knew, or was reckless in not knowing" that the resulting MD&A, was false and misleading.

Although Plaintiff's allegations do require the Court to draw an inference about Defendant Conaway's knowledge, when assessing a motion to dismiss the Court should "draw all reasonable inferences from those allegations in favor of the non-moving party." *Mayer*, 988 F.2d at 638. The Court finds that it is entirely reasonable to infer that a CEO Conaway, allegedly aware of a major inventory mistake and responsible for creating and implementing a plan to alleviate the liquidity problems, as well as a cover story to assuage investors, knew or was reckless in not knowing that Kmart's subsequent MD&A was false and misleading. Indeed, the whole purpose of the alleged Project SID and Project eLMO cover story was to hide the nature, cause, and severity of the liquidity problem from investors. The inference that CEO Conaway's actions led to the subsequent MD&A failure to describe the Kmart's change in financial position, or the cause of that change, is one that is entirely reasonable and one that is clearly drawn from the facts as pleaded. For the foregoing reasons, Defendant's challenge relating to Counts Two and Three fails.

Turning to Defendant's challenge of Count One, Defendant argues that Plaintiff has not alleged primary liability under Section 10(b) because the complaint does not sufficiently set forth the falsity of Defendant's statements. Furthermore, Defendant argues, the complaint fails to support any inference of the requisite scienter.

The allegations of Count One revolve around both the alleged misrepresentations in the MD&A as well as those statements made at the November 27, 2001 conference call. With respect to the MD&A, as discussed immediately above, Plaintiff has sufficiently alleged facts that allow a clear inference that the MD&A was false and misleading and that Defendant CEO Conaway knew

12

the representations made in the MD&A did not divulge the true nature of Kmart's problems or the remedial actions Kmart had subsequently taken.

Turning to the November 27, 2001 conference call, Defendant made at least two statements during that call that Plaintiff alleges were false and misleading. First, Defendant Conaway stated, "We've clearly caused some systems issues, as John [McDonald] mentioned. During our accounts payable conversion, certain invoices involved in the integration were dropped and [this] has clearly caused some confusion." Pl. Compl., p. 10 (alteration in original). Plaintiff alleges this was false because it was not Project eLMO that caused invoices to be "dropped," but instead, it was Project SID that was causing Kmart's failure to pay vendors and the vendors subsequent refusal to ship goods that was causing problems. Furthermore, Plaintiff sufficiently alleges Defendant Conaway's scienter; Plaintiff alleges that Conaway knew his statement was false because he was aware of the problems resulting from Project SID and because of that knowledge, created and approved the Project eLMO cover story. Therefore, at this point in the cause of action, the Court finds that Plaintiff has sufficiently pleaded its claim as to this statement.

Plaintiff also alleges that a second statement, made during the conference call was false and misleading. Plaintiff alleges that when asked by an analyst about Kmart's problems with vendors, Conaway gave a false and misleading response when he indicated that "there was a lot of noise from a small group of suppliers." The complaint alleges that this statement was false because "a substantial number of vendors had stopped shipping product to Kmart stores including such major suppliers as Black and Decker, Newell Rubbermaid, Gillette, LEGO, and Samsung." Pl. Compl., p. 11. Defendant again argues that the complaint does not adequately allege that this statement was false nor that it was made with the requisite scienter. The Court again finds this challenge without

13

merit. Although Defendant Conaway argues that Plaintiff has not defined what it meant by a "substantial number of vendors" other than to name a handful of vendors that stopped shipping even though Kmart had more than 2,100 suppliers, the Court finds that the liberal pleading requirements of Federal Rule of Civil Procedure 8 do not support Defendant Conaway's challenge. The Court neither requires, nor wishes to be inundated with, in the initial complaint, a list of each and every supplier that may have ceased shipping to Kmart as a result of alleged liquidity problems. While there may be a time when such a detailed factual allegation is proper or even necessary, an initial complaint is not one of those times. *See* Fed. R. Civ. P. 8. Consequently, this Court finds that the allegations set forth by Plaintiff have provided Defendant McDonald with "fair notice of the plaintiff's claim[s]" such that he "may prepare a responsive pleading." *Michaels Bldg. Co.*, 848 F.2d at 679. Similarly, considering Defendant's challenge to the shortcomings of Plaintiff's complaint as to scienter, the Court is satisfied that, given Plaintiff's allegations of the facts Defendant knew, that Defendant Conaway knew or was reckless in not knowing that his statement was false has been sufficiently pleaded.

**VI.    Conclusion**

Accordingly, for the aforementioned reasons, the Court will deny Defendant McDonald's and Defendant Conaway's motion to dismiss. Although each Defendant has vigorously defended his actions, or inactions as they may be, with respect to Plaintiff's allegations, the matter now before the Court is only whether Plaintiff's complaint sufficiently sets forth a legal and factual basis such that the allegations taken as true, may entitle Plaintiff to legal relief. *See Minger*, 239 F.3d at 797. Consequently, after thoroughly considering these matters, the Court finds that each Defendant has failed to demonstrate "beyond doubt," that Plaintiff "can prove no set of facts in support of his claim

14

which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant John T. McDonald's motion to dismiss [docket entry 10] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Charles C. Conaway's motion to dismiss [docket entry 9] is **DENIED**.

**SO ORDERED.**

Dated:  September 29, 2006                         s/Paul V. Gadola
                                                   HONORABLE PAUL V. GADOLA
                                                   UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   October 3, 2006  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

 Ellen E. Christensen; Dean M. Conway; Alan M. Lieberman; Todd R. Mendel; Timothy P. Peterson; Steven C. Susser; John F. Sylvia                         , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                 Hille R. Sheppard                        .

                                                   s/Ruth A. Brissaud
                                                   Ruth A. Brissaud, Case Manager
                                                   (810) 341-7845

15