UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SECURITIES AND EXCHANGE COMMISSION,
        Plaintiff,                     CASE NO.: 2:05-CV-40263

vs.

                                     MAGISTRATE JUDGE STEVEN D. PEPE

CHARLES C. CONAWAY
        Defendant.
_____/

MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DOUGLAS R. CARMICHAEL(DKT. #97)

Defendant Charles Conaway moved to exclude Plaintiff's expert, Douglas R. Carmichael, specifically on *Daubert*[1] grounds of his not being a competent or reliable to give opinions on disclosure requirements and materiality under Item 303 of Regulation S-K. A telephonic hearing on this and other motions in limine was held on the afternoon of May 7, but was inadvertently not recorded, thus a written decision is necessary.

Under Federal Rule of Evidence ("Fed. R. Evid.") 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court determined that under the Rules of Evidence, trial judges are to screen and "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert* sets out several factors that trial courts might use in determining the reliability of expert scientific

---
[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)

testimony, including: whether the expert's theory or technique can be or has been tested, whether the theory or technique has been subject to peer review and publication, the known or potential rate of error "in the case of a particularly scientific technique" and "the existence and maintenance of standards controlling the technique's operation," and finally, general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 592-94; *see also* Fed. R. Evid. 702 Advisory Committee Notes. The Court in *Daubert* described the inquiry under Rule 702 as "a flexible one" which focuses on the evidentiary relevance and reliability of the expert's testimony. *See id*. at 594-95. The Advisory Committee Notes to Rule 702 indicate that cases decided after *Daubert* show that "the rejection of expert testimony is the exception rather than the rule."

In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Court determined that *Daubert*'s analysis should also apply to "testimony based on 'technical' and 'other specialized' knowledge." *Kumho*, 526 U.S. at 141, 147-49. Such testimony includes that of engineers "and other experts who are not scientists." *Id*. at 141. A district judge has broad discretion in determining the reliability of an expert. *See id*. at 141-42, 158. Emphasizing the flexible nature of a trial judge's inquiry under the *Daubert* framework, the Court in *Kumho* explained, "[A] trial court *may* consider one of more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But . . . *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id*.

In *Berry v. Crown Equipment Corp.*, 108 F. Supp. 2d 743 (E.D. Mich. 2000), Judge Rosen detailed the court's task in determining the qualifications of an expert witness under Rule 702 and *Daubert*. Judge Rosen noted that when determining the admissibility of expert

testimony on scientific and technical issues, the court should "examine 'not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Berry*, 108 F. Supp. 2d at 748-49 (quoting *Smesler v. Norfolk Southern Ry. Co*., 105 F.3d 299, 303 (6th Cir. 1997)). In regard to the issue of foundation, "the trial court must determine whether the expert's training and qualifications relate to the subject matter of his proposed testimony." *Id*. at 749. After establishing this "foundational threshold," the expert "must then provide further foundational testimony as to the validity and reliability of his theories." *Id*.   See also *Berry v. City of Detroit*, 25 F.3d 1342(6th Cir. 1994).

The issues presented are whether or not Carmichael

1. Is qualified to be an expert on Kmart's MD&A disclosures in its 2001 10-Q(3) filing;

2. His report and testimony are reliable under *Daubert* and its progeny

Carmichael has extensive expertise in accounting generally, and substantial experience with MD&A disclosures specifically. Carmichael has three publications on MD&As. Of those, Carmichael's chapter on MD&A disclosure in Guide to PCAOB Audits, published by Practitioner's Publishing Company ("PPC"), has been peer-reviewed. Further, Section 1003.15 discusses "must disclose" matters for the MD&A. The very first topic is *Liquidity*, and a related discussion of FR-36.

**Teaching.** At Baruch College where Carmichael has held a tenured professorship in the business school for almost 25 years, during the semester in the auditing class that Carmichael teaches, he normally "spend[s] a week on the subject matter that encompasses the MD&A." (Carmichael Dep. at 65:18-20, 21-23) They discuss matters that necessarily would be raised by, and required for compliance with, the FRR 36 (the 1989 Release) and Item 303. (*Id.* at 67:3- 10;

64:2-8, 64:12-65:5, 65:9-14) They "look[] at specific 10-K's and 10-Q's of public companies and discuss[] those, including the MD&A's." (*Id.* at 65:25-66:3) In Carmichael's teaching, "the focus is on the nature of the disclosures and the difference between the MD&A disclosures and the disclosures made in the financial statements" (*Id.* at 67:7-10, 66:5-9)

**Practical Experience.** Carmichael also has worked on MD&A's for large public companies. He assisted an attorney, Alan Levenson, at Fubright & Jaworski. Levenson was a former Director of the Division of Corporate Finance at the SEC (*Id.* at 53:7- 11; 54:3-4). Carmichael explained: "after [Levenson] left [the SEC] he had a large number of public company clients, and he often engaged me to work with them on disclosure matters." (*Id.* at 53:9-11) Levenson was the "lead attorney on" these public company clients. (*Id.* at 53:20-23) Carmichael worked on these matters from "the late '80s through the '90s," The work for Levenson involved "advising public companies on their disclosures at the time that they were making the disclosures." (*Id.* at 56:10-16) Those matters "related to, specifically to disclosure, including MD&A." (*Id.* at 61:8-11) "I would evaluate the facts and circumstances and gave my advice on disclosure of various issues." (*Id.* at 56:18-20) For a number of these maters Carmichael actually drafted the MD&A disclosure.

**Participation in Standards**. Carmichael also was directly involved in the formulation of, or comment on, standards with respect to the MD&A. For example, at the AICPA, Carmichael "ha[d] a role in drafting" AU Section 550, entitled "Other Information in Documents Containing Audited Financial Statements" (*Id.* at 78:12-18), which would apply to MD&A outside of the attestation engagement. (*Id.* at 71:10-12) He also advised the vice chairman of the public accounting firm, Coopers & Lybrand, when Coopers made a proposal "to the SEC preceding the

'89 release" on the MD&A. (*Id.* at 61:17-62:11).

Although Defendant recognizes Carmichael's expertise on accounting issues generally, Defendant challenges the depth of Carmichael's experience on MD&A disclosures, arguing that his publications were superficial summary of regulations and that his practical experience was simply assisting an attorney, who was the person actually responsible for the drafting of MD&A disclosures. Yet, Carmichael's specific experience with MD&A disclosures is greater than Defendant acknowledges. And, despite Defendant's assertions that MD&A disclosures involves legal rather than accounting disciplines, MD&A disclosures involve mixed questions incorporating both accounting and legal issues. More specifically, elements such as liquidity, cash flow, and materiality are well within the accounting disciplines that form the bulk of Carmichael's vast experience. If defense counsel feels Dr. Carmichael does not understand the standard of materiality needed for a securities fraud violation or is applying an incorrect standard of materiality, that proposition can be tested un cross examination which might provide cause to modify or rescind this opinion. Based on that experience, both in accounting principles generally and on MD&A disclosures, he is qualified as an expert on the accounting issues underlying Kmart's MD&A disclosures.

Finally, there is a quid pro quo expert testimony consideration, in that Defendant's expert witness, Professor Averm Tucker, is giving his opinion on whether there was a material liquidity deficiency in the third quarter of 2001 at Kmart, which opinion is the opposite of that of Dr. Carmichael. It is an argument in favor of admitting an opinions witness where, in fairness, it has somewhat of a balancing effect of the opponent's expert. *Police Retirement System of St. Louis v. Midwest Investment Advisory Serv., Inc.*, 940 F.2d 351, 357 (8th Cir. 1991) (holding

admission of legal opinions harmless where both sides introduced evidence). Plaintiff has not challenged Professor Tucker's right to testify as an expert, and the Plaintiff should have the right to an expert to counter Tucker's testimony. When the Court proposed the defense withdrawing Mr. Tucker if the SEC withdrew Dr. Carmichael, that proposal was rejected.

Attached as Appendix A is a *Daubert/Kuhmo* Tire chart analyzing Dr. Carmichael's competence to testify, and it id determined that he is competent to give opinion testimony on the central issues of this case even under a more rigorous application of *Daubert and Kuhmo* Tire.

Accordingly, Defendant's motion to exclude Carmichael's testimony is **DENIED.**


Date: June 5, 2009                           s/Steven D. Pepe
Ann Arbor, Michigan                   United States Magistrate Judge


Certificate of Service

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 5, 2009 .

                                             s/Jermaine Creary
                                             Courtroom Deputy

Appendix A

PROPOSED OPINION WITNESS:  ISSUE: MD&A DISCLOSURES & "MATERIALITY"

DOUGLAS CARMICHAEL

OPINION TESTIM0NY  EVALUATION CRITERIA:
PLUS FACTORS under *Daubert/Kuhmo* Tire:

| | |
|---|---|
| 1. Can Technique be tested: | NO |
| 2. Subject to peer review. | |
| Publication Generally | YES |
| MD&A PUBLICATIONS | YES (albeit limited on MD&A) |
| 3. None or potential rate of error | N/A |
| 4. General acceptance in "relevant scientific community" | N/A |
| General acceptance by Courts to give opinion testimony | YES |
| 5. Significant technical expertise in specific area | YES |
| (Principles with some universality (deductive)  that can be applied generally irrespective of case facts. Opinion "flowing naturally from an expert's line of scientific research or technical work -- *Berry*'s aeronautical engineer.[2] Apply *Daubert* more leniently.) | |
| Significant professional expertise in specific area | YES |
| 6. Relevant personal knowledge & experience | YES |
| (Principles derived from data derived observations (inductive) - conclusions not Dependent on a theory. Opinion flowing from extensive experience and multiple observations -- *Berry*'s Beekeeper.) | |

NEGATIVE FACTORS:[3]

---

[2] *Berry v. City of Detroit*, 25 F.3d 1342(6th Cir. 1994).

[3] Apply *Daubert/Kuhmo Tire* factors with greater rigor. Proffering party must come forward with other objective verifiable evidence that the testimony is based on valid principles.

7.  Opinion/ Method Prepared Solely for Litigation                                  YES
        (Research not conducted independent of litigation)

8. Testimony as percentage of income/ professional undertaking
        (Normal workplace vs. Expert for hire.

---

(e.g. 1-6 above).  *Johnson v. Manitowoc Boom Trucks, Ind.* 484 F. 3d 426 (6th Cir. 2007). citing *Daubert* remand decision, 43 F. 3d, 1311, 1317 (9th Circuit).